**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-50614
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CARLOS MOYA-LEYVA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
(P97-CR-48-1)
_____

July 30, 1998

Before KING, SMITH, and PARKER, Circuit Judges.

PER CURIAM:[*]


At approximately 6:15 a.m., Carlos Moya-Leyva was stopped near the Marfa Border Patrol checkpoint. Resting on his back seat, in plain view of the officer making the stop, were bundles of marihuana. On the front seat were a jack, spare tire, and other items normally carried in a car trunk. The trunk, in turn, was full of marihuana. A total of 344.3 pounds of marihuana was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ultimately found in the car.

Moya-Leyva made a conditional plea of guilty to importing marihuana, reserving the right to appeal the denial of his motion to suppress. We affirm.

Border Patrol agents may temporarily stop vehicles for investigation if the agent is "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the vehicle is involved in some illegal activity. *See United States v. Brigoni-Ponce*, 422 U.S. 873, 884 (1975). A court deciding whether an officer had reasonable suspicion must consider the totality of the circumstances, including the officers' collective knowledge. *See United States v. Cardona*, 955 F.2d 976, 977-80 (5th Cir. 1992). Courts generally look to a number of factors that may justify suspicion, including the characteristics of the area; the officers' experience; proximity to the border; patterns of traffic; characteristics of the vehicle; the driver's behavior; known information of recent illegal trafficking in the area; and the number, behavior, and appearance of passengers. *See Brigoni-Ponce*, 506 U.S. at 884-85.

The district court considered the following circumstances: The Marfa checkpoint is located about sixty miles from the Mexican border, on a route frequently used by smugglers. Moya-Leyva passed by the checkpoint at a time known by smugglers to be when officers change shifts. He was traveling north, away from the border. As

2

he passed by, officers were searching another car, a Firebird, to which a drug-sniffing dog had alerted. Although the Firebird appeared to be designed to smuggle drugs, the officers had found none and had therefore concluded that the Firebird might have been the "decoy" or "scout" car in the commonly-used "lead car, load car" arrangement. The driver of the Firebird had also mentioned to the officers that he had recently purchased several "blue narco's cars." Moya-Leyva was driving a dark blue Plymouth four-door, a former police car.

As he drove by, the officers could see by the checkpoint's streetlights that Moya-Leyva stared straight ahead "as if he had blinders on," contrary to their experience that it is "human nature" to look over at officers searching a car. The Firebird they were searching had temporary paper tags, similar to Moya-Leyva's. The officers also noticed that Moya-Leyva's car was riding low, as if it was carrying a heavy load in the trunk. The officers concluded that Moya-Leyva's vehicle might be the "load car" following the Firebird's lead. When one officer said to the other that he was "going after" Moya-Leyva's car, the driver of the Firebird appeared nervous.

Border Patrol Agent Harrison followed Moya-Leyva. Harrison had twelve years' experience with the Border Patrol, with 2½ years' experience at the Marfa checkpoint. Harrison found it unusual that Moya-Leyva never looked at him in the rear-view mirror. On several occasions, Moya-Leyva slowed down as if to encourage Harrison to

3

pass, but never pulled out of the traffic lane as Harrison said is customary in the area. Eventually, convinced that there was "something illegal going on," Harrison put on his siren to stop Moya-Leyva. After traveling for about another mile, Moya-Leyva pulled over, and Harrison saw the marihuana in plain view.

Based on these circumstances, Agent Harrison easily had reasonable suspicion to stop Moya-Leyva. AFFIRMED.